**Gavin W. CRAIG et al. v. UNITED STATES.**

**Nos. 7862, 7863.**

Circuit Court of Appeals, Ninth Circuit.

April 20, 1936.

■

For original opinion, see 81 F.(2d) 816.

Ames Peterson, Mark L. Herron, A. I. McCormick, Paul D. McCormick, and Gavin W. Craig, all of Los Angeles, Cal., and Henderson Stockton, of Phœnix, Ariz., for appellant Craig.

Hugo H. Harris, of Los Angeles, Cal., for appellant Weinblatt.

Peirson M. Hall, U. S. Atty., and Charles H. Carr and M. G. Gallaher, Asst. U. S. Attys., all of Los Angeles, Cal.

PER CURIAM.

Rehearing denied.

DENMAN, Circuit Judge (dissenting).

The conspiracy in which Judge Craig is alleged to have joined is a conspiracy to impede the due administration of justice in the pending criminal procedure against one McKeon and others by some one of the following acts: "Or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000, or imprisoned not more than one year, or both." 18 U.S.C.A. § 241.

As I see the evidence, Judge Craig is not shown to have had any knowledge of the aims or purposes of his alleged coconspirators other than the procurement of the intercession of United States Senator Shortridge with the Department of Justice at Washington to present facts which, if Craig understood them right, showed that the indictments were not justified. There is no evidence concerning Craig suggesting any other thing to be done by the Senator.

The method by which the Senator was to be induced to present the facts on behalf of McKeon and others is obviously reprehensible from the standpoint of political ethics. Judge Craig, according to the testimony on which the verdict must be based, stated first that $125,000 must be contributed to the Senator's campaign fund and later stated that $50,000 must be raised for this purpose, but that $10,000 was to be paid immediately for the services of the "attorneys in very high standing" who were also to be employed. He did not suggest the name of any firm of attorneys. The $50,000 was to be put in escrow or to be donated to the Senator. This conversation was had with McKeon and when McKeon again consulted with him Judge Craig told him that one Weinblatt would call on McKeon and talk the matter over. When Weinblatt called he told McKeon that Judge Craig had said that the business from thereon would be carried on between Weinblatt and McKeon and that McKeon was not to see Judge Craig any more.

There is other evidence from which an inference may be drawn that the money was not to be used to influence any action concerning the dismissal of the indictments of McKeon and others. Highly reprehensible as this would be, if true, possibly constituting obtaining money under false pretenses, or the purchase of influence with a Senator to perform a proper act outside his senatorial duties, it is no evidence of a conspiracy to violate the provisions of the statute above quoted.

There being no other evidence connecting Craig with any attempt or suggested attempt to influence any attorney connected with the prosecution of McKeon, the propriety of the conviction of Craig must rest on the answer to the question—Is it an endeavor at a corrupt obstruction of the administration of justice to secure the influence of a United States Senator properly to present facts to the Department of Justice, which facts would tend to show the innocence of the accused persons and might cause the dismissal of the indictments, by

contributing a large campaign fund in aid of the Senator's pending election?

Fearing that the fact that the evidence finds the Judge engaged in a smeary business may have obscured my analysis of the statute and evidence, I am dissenting from the refusal to grant the petition for rehearing, desiring to hear further argument on the question whether, regardless of the political ethics in securing the services of the Senator for the purposes described, the method of the procurement of his services infected the services with a corruption within the meaning of the statute, although the services when rendered are not improper in themselves.

In this connection it should be repeated that the evidence affirmatively shows that the Senator had no connection with or knowledge of any of the transactions of the alleged conspiracy.